UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JASON RIOS,** | Civ. No. 2:12-4716 |
| Plaintiff, | (KM)(MAH) |
| v. | **MEMORANDUM OPINION** |
| **CITY OF BAYONNE et al.,** | |
| Defendants. | |

## KEVIN MCNULTY, U.S.D.J.:

This matter comes before the Court on the motion of Lieutenant Robert Deczynski and the motion of Officer James Mahoney, joined by Officers Joseph Saroshinsky and Roman Popowski, the City of Bayonne, the Bayonne Police Department, Police Chief Robert Kubert and Sergeant Franco Amato, to dismiss the civil rights complaint brought by the plaintiff, Jason Rios.

Rios alleges that on August 29, 2010, he reported that his car, which was parked behind his residence, was on fire. Bayonne fire and police department officials came to the scene. After the fire was extinguished, Rios was allegedly unlawfully searched, placed under false arrest, falsely imprisoned, and assaulted by officers of the Bayonne Police Department. The pending motions seek dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and also on the basis of qualified immunity.

For the reasons set forth below, the motions to dismiss are **GRANTED** in part and **DENIED** in part.

1

I. **Background**

Rios brings this action under 42 U.S.C. § 1983 against the City of Bayonne and the Bayonne Police Department (together, "Bayonne");[1] Chief of Police Robert Kubert; Lt. Robert Deczynski; Sgt. Franco Amato; Officer James Mahoney; Officer Joseph Saroshinsky; Officer Roman Popowski; and John Does 1-10. Compl. (Docket No. 1). The Complaint, filed on July 30, 2012, contains six counts: (1) false arrest and imprisonment under 42 U.S.C. § 1983 (Compl. ¶¶ 58–62); (2) illegal search and seizure under 42 U.S.C. § 1983 (*Id.* ¶¶ 63–67); (3) excessive force under 42 U.S.C. § 1983 (*Id.* ¶¶ 68–73); (4) municipal liability under 42 U.S.C. § 1983 and N.J. Stat. Ann. § 10:6-2 (*Id.* ¶¶ 74–79); (5) false arrest and imprisonment, illegal search and seizure, and excessive force under N.J. Stat. Ann. § 10:6-2 (*Id.* ¶¶ 80–90); (6) illegal search and seizure under the New Jersey Constitution (*Id.* ¶¶ 91–95).

The plaintiff, Rios, was a resident of Hudson County, New Jersey. *Id.* ¶ 12. Sgt. Amato, Lt. Robert Deczynski, Officer Mahoney, Officer Saroshinsky, and Officer Popowski were officers of the Bayonne Police Department. *Id.* ¶¶ 13, 15. Defendant Chief Robert Kubert was, at all relevant times, the Chief of Police of the Bayonne Police Department. *Id.* ¶ 14. These officers are sued individually and in their official capacities. *Id.* ¶¶ 13–15. The City of Bayonne is a municipal corporation and a public employer of the individual Defendants. *Id.* ¶ 16. The Bayonne Police Department is a division of the City of Bayonne. *Id.* ¶ 17.

---

[1] A New Jersey municipal police department is not a separate entity from the municipality. N.J. Stat. Ann. § 40A:14–118 (municipal police department is "an executive and enforcement function of municipal government"); *Adams v. City of Camden*, 461 F.Supp.2d 263, 266 (D.N.J. 2006); *see also McGovern v. Jersey City*, No. 98-CV-5186, 2006 WL 42236, at *7 n.4 (D.N.J. Jan. 6, 2006) (police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of local municipalities, not separate entities), *Padilla v. Twp. of Cherry Hill*, 110 F. App'x. 272, 278 (3d Cir. 2004) (same), *DeBellis v. Kulp*, 166 F.Supp.2d 255, 264 (E.D. Pa. 2001) (same). Therefore, Rios' claims against the Police Department are properly asserted against the City of Bayonne.

Rios has brought a civil rights claim for damages arising under 42 U.S.C. § 1983, and the Court therefore has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a). Diversity of citizenship is not alleged, and does not appear to be present. *See* 28 U.S.C. § 1332. Thus, the Court may hear the remaining state law claims, if at all, solely on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367.

Rios's Complaint alleges the following facts. For purposes of this motion to dismiss only, I must assume their truth, although of course they have not yet been tested by any fact finder. *See* p. 5, *infra*.

On August 29, 2010, Rios called 911 to report that his vehicle was on fire behind his residence at 72 West 33rd Street, Bayonne, New Jersey. *Id.* ¶ 19. Members of the Bayonne Fire Department and the Bayonne Police Department ("Bayonne PD"), including Defendants Amato, Mahoney, Saroshinsky, and Popowski, were dispatched to the scene. *Id.* ¶ 21. The firefighters extinguished the fire while Rios remained "at a safe distance" with members of the Bayonne PD. *Id.* ¶¶ 22–23, 26. Rios then walked over to the vehicle to assess the damage and was advised by firefighter Christopher Pellicca not to touch the vehicle, which was still smoldering. *Id.* ¶¶ 27–28.

Rios obeyed Pellicca's order and did not enter or touch the vehicle, but "became upset" when he saw the damage to his car. *Id.* ¶¶ 30–31. Pellicca then made an "insensitive remark," to which Rios responded. *Id.* ¶¶ 32–33. As Rios was walking away, Mahoney, Saroshinsky, Popowski, and Amato approached him from behind. They sprayed Rios in the back of his head, and then in the face, with pepper spray. *Id.* ¶¶ 34–36. Then, while Amato stood a few feet away, Mahoney, Saroshinsky, and Popowski put Rios on the ground and placed him under arrest. *Id.* ¶ 38. While Rios was handcuffed, Mahoney brought him to a nearby hose and flushed his eyes, and then escorted him to a marked Bayonne PD Cruiser. *Id.* ¶¶ 39–40.

3

Near the rear passenger door of the police cruiser, Mahoney, assisted by Saroshinsky and Popowski, began patting Rios down. *Id.* ¶¶ 41–43. During this search, Mahoney threw Rios, still handcuffed, face-first to the concrete, and Mahoney, Saroshinsky, and Popowski physically assaulted Rios. *Id.* ¶¶ 44–45. Rios lost consciousness at some point during the assault. *Id.* ¶ 46. While he was unconscious, Amato directed Saroshinsky to position the police cruiser, and the Bayonne Fire Department moved the fire engine, to block the view of people who had congregated on the other side of West 33rd Street. *Id.* ¶¶ 47–49. Shortly afterwards, Rios was transported to Bayonne Medical Center. *Id.* ¶ 50.

The complaint further alleges that Mahoney and Saroshinsky authored a false police report relating to the incident, which was reviewed and approved by Defendant Lt. Deczinski. *Id.* ¶51. In addition, Mahoney "falsely swore" in Complaint 0901-W-2010-01176 that Rios had resisted arrest in violation of N.J. Stat. Ann. § 2C:29-2A(1) and obstructed an arson investigation in violation of N.J. Stat. Ann. § 2C:29-1(b). *Id.* ¶ 52. The Hudson County Prosecutor's Office reviewed the charges on August 30, 2010, and remanded them to Bayonne Municipal Court, downgraded to disorderly persons offenses. *Id.* ¶ 54. Rios appeared in Bayonne Municipal Court with his counsel during the fall of 2010 and provided the municipal prosecutor with still photos and recorded video footage of the incident. *Id.* ¶ 55. The prosecutor informed Rios's counsel that the matter would be adjourned. Although the State case remains open, proceedings have not been rescheduled at this time. *Id.* ¶¶ 56–57.

Rios filed this action on July 30, 2012. (Docket No. 1). On September 5, 2012, the case was reassigned to me. On September 17, 2012, Lt. Deczinski filed a motion to dismiss the complaint. (Docket No. 13). On October 17, 2012, Officer Mahoney filed a separate motion to dismiss the complaint (Docket No. 27), which was joined by Officer Saroshinsky (Docket No. 30); Officer Popowski (Docket No. 34); Bayonne, Chief Kubert, and Sgt. Amato (Docket No. 31).

## II. Discussion

### A. Arresting Officers Mahoney, Saroshinsky, and Popowski

Mahoney, Saroshinsky, and Popowski (here, the "Arresting Officers") were three of the Bayonne Police Officers at the scene of the alleged incident. Mahoney, later joined by Saroshinsky and Popowski, moved to dismiss Counts One, Two, Five, and Six of the Complaint on the grounds that (1) the Complaint failed to meet pleading standards under the federal rules, and (2) that the factual allegations in the Complaint establish that he is entitled to qualified immunity. (Docket No. 27 ("Def. Br."[2]) at 2; Docket Nos. 30, 34).

#### 1. Failure to Meet Pleading Standards under Fed R. Civ. P. 8(a)

The Arresting Officers argue that the factual allegations in the Complaint fail to meet the pleading standards set forth in Fed. R. Civ. P. 8(a). In their view, the Complaint contains no more than general and conclusory allegations, or a formulaic recitation of the elements of the causes of action. Viewed in this way, the allegations would fail to meet the "facial plausibility" test of *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). *See* Def. Br. at 5-6. I find the Complaint sufficient and deny the motion to dismiss on this ground.

Motions to dismiss a complaint for failure to state a claim upon which relief can be granted are considered under Fed. R. Civ. P. 12(b)(6). The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (established "reasonable inferences" principle not undermined by subsequent *Twombly* case).

---

[2] "Def. Br." refers to the brief submitted by Officer Mahoney and joined by all Defendants other than Lt. Deczynski.

Pursuant to Fed. R. Civ. P. 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." That rule does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, stating a claim that is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

I discuss the Arresting Officers' motion separately with respect to Rios's federal claims under Section 1983 and his state law claims under N.J. Stat. Ann. 10:6-2 and the New Jersey Constitution.

### a. 42 U.S.C. § 1983 (Counts 1, 2, and 3)

Rios brings claims against the Arresting Officers under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments based on (1) false arrest and false imprisonment (Count 1); (2) illegal search and seizure (Count 2); and use of excessive force (Count 3). Compl. ¶¶ 9–12. To state a claim under Section 1983, Rios must allege facts sufficient to show that (1) he was deprived of a constitutional right or a federal statutory right, and (2) the conduct at issue occurred "under color of law." *Parratt v. Taylor*, 451 U.S. 527 (1981).

Rios has alleged facts regarding his false arrest and imprisonment, illegal search and seizure, and excessive force claims that are sufficient to state a

6

plausible cause of action for violation of his constitutional rights under 42 U.S.C. § 1983. The Defendants do not dispute that such claims would constitute violations of the Fourth and Fourteenth Amendments if Rios asserted sufficient facts to support them. Rather, Defendants' argument depends on the requirement that the claims related to Rios's arrest and search[3] require a sufficient allegation that the officers lacked probable cause. *See* Def. Br. at 8–9. The Defendants contend that, because the officers possessed probable cause, they could not be liable for false arrest, and that an arrest supported by probable cause would "warrant and validate" the subsequent search of the Plaintiff's person. Def. Br. at 8.

I must consider the existence, or not, of probable cause with respect to the claims of false arrest, false imprisonment, and illegal search and seizure.[4] *Groman v. Twp. of Manalapan*, 47 F. 3d 628, 634 (3d Cir. 1995) (plaintiffs must demonstrate police lacked probable cause to prevail on false arrest claim); *Johnson v. Bingear*, 441 F. App'x 848, 852 (3d Cir. 2011). Probable cause for an arrest exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe than an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). The question of probable cause in a Section 1983 action is generally one for the jury, particularly where the determination rests on the credibility of witnesses. *Id.* (citing *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998); *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)). A district court may determine

---

[3] *See* Compl. at 9–11 (Counts 1 and 2).
[4] A claim of excessive force, by contrast, is not necessarily defeated by the existence of probable cause for the arrest. While police officers are privileged to commit a battery pursuant to a lawful arrest, that privilege is negated by the use of excessive force. *See Groman v. Twp. Of Manalapan*, 47 F.3d 628, 633–34 (3d Cir. 1995) (*citing Edwards v. City of Phila.*, 860 F.2d 568, 572 (3d Cir.1988). *Groman* discussed both excessive force and false arrest claims, distinguishing the latter as requiring a showing that the police lacked probable cause for the arrest. *Id.* at 634.

that there is probable cause as a matter of law, however, "if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Id.* (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d. Cir. 1997)).

The allegations are not so one-sided as to compel a conclusion that probable cause did or did not exist as a matter of law. Rather, such a finding would depend on the relative credibility of the parties' differing accounts of the events of August 29, 2010. The Arresting Officers dispute Rios's depiction of the events leading to his arrest. Their brief, moreover, introduces new facts, including an allegation that Rios disobeyed the orders and warnings of the police when he continued to approach his vehicle. Def. Br. at 9. They do concur, however, that Rios responded to the firefighter Pellicca's allegedly insensitive remark, and that Rios was "subdued" with a "non-lethal agent." *Id.*

Such disputes generally have no place in a motion to dismiss, which requires the Court to accept plausible allegations and construe them in the plaintiff's favor. In short, for purposes of this motion only, the Court must take the Complaint's allegations as true. *Phillips*, 515 F.3d at 231. The Complaint alleges that Rios had an officer's permission to inspect the vehicle and that he obeyed the officer's direction, which was that he not touch or enter the vehicle. The Complaint will bear the interpretation that, without cause or provocation, the Arresting Officers pepper-sprayed Rios, handcuffed him, threw him down on the pavement, searched him, and assaulted him. Compl. ¶¶ 19–49. Such allegations would support a claim that probable cause was lacking. *See Sherwood*, 113 F.3d at 401. Rios's allegations go beyond "labels and conclusions" to state a plausible claim for relief under Section 1983. *Twombly*, 550 U.S. at 570. Whether they are true, of course, is another matter, one that must await further proceedings in the case.

The Arresting Officers' motion to dismiss the Complaint will be denied as to the Section 1983 claims in Counts 1, 2, and 3.

### b. N.J. Stat. Ann. § 10:6-2 *et seq* and the New Jersey Constitution

The Arresting Officers also seek dismissal of Rios's claims under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2, and the New Jersey Constitution (Counts 5–6) for false arrest and imprisonment, illegal search and seizure, and excessive force. Compl. ¶¶ 80–95; Def. Br. at 11. These state-law claims essentially parallel the Section 1983 claims discussed above.

The NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J. Stat. Ann. § 10:6-2(c). Although the Arresting Officers' motion does not make any specific arguments for dismissal based on the elements of the NJCRA claim, this District has repeatedly interpreted the NJCRA as being parallel to Section 1983. *Hottenstein v. City of Sea Isle City*, No. 11-740, 2013 WL 5603839, at *6 (D.N.J. Oct. 11, 2013) (unreported); *Petit v. New Jersey*, No. 09-3735, 2011 WL 1325614, at *3 (D.N.J. March 30, 2011) (unreported); *Slinger v. New Jersey*, No. 07–5561, 2008 WL 4126181, at *5–6 (D.N.J. Sept. 4, 2008) (unreported), *rev'd on other grounds,* 366 F. App'x 357 (3d Cir. 2010); *Armstrong v. Sherman,* No. 09–716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010) (unreported).

Therefore, for the reasons discussed above at pp. 6–8, Rios has also sufficiently pleaded violations of the NJCRA in Count 5. Count 6 of the Complaint appears to state a claim directly under the State Constitution itself.

Given that NJCRA provides for such a cause of action, Count 6 appears to be superfluous at best, but I will not dismiss it at this time.

## 2. Qualified Immunity

The Arresting Officers, Mahoney, Saroshinsky, and Popowski, also argue that the Complaint should be dismissed against them on the basis of qualified immunity. Def. Br. at 11. Qualified immunity issues should be resolved at the earliest possible stage of litigation in order to prevent disruption of the legitimate functions of government. *Anderson v. Creighton*, 483 U.S. 635, 626 n.6, 107 S.Ct. 3034 (1987) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727 (1982)). The Third Circuit has nevertheless cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (not precedential); *see also Schrob v. Catterson*, 967 F.2d 929, 938 (3d Cir. 1992) ("if the plaintiff's allegations are sufficient as a matter of law to avoid an immunity defense, but the defendant denies engaging in the alleged conduct, then discovery may be necessary before [question of qualified immunity] can be resolved") (internal quotations omitted).

Under the doctrine of qualified immunity, "law enforcement officers acting in their professional capacity are generally immune from trial insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Wilson v. Layne*, 526 U.S. 603, 614, 119 S.Ct. 1692 (1999); *Harlow*, 457 U.S. at 818) (internal quotations omitted). Qualified immunity applies regardless of whether the official's error is based on a mistake as to law, fact, or a mixed question of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009) (citing *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S.Ct. 1284 (2004) (Kennedy, dissenting)); *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894 (1978).

Qualified immunity depends on the answers to two questions: (1) whether the official's conduct violated a constitutional or federal right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (no longer requiring courts to determine *Saucier* prongs (1) and (2) in that order); *see also Sharp v. Johnson*, 669 F.3d 144, 159 (3d. Cir. 2012); *Ray v. Twp. of Warren*, 626 F.3d 170, 174 (3d Cir. 2010). Here, the Arresting Officers agree in general that there are clearly established rights under the Fourth and Fourteenth Amendment to be free of false arrest, false imprisonment, and illegal search and seizure. *See* Def. Br. at 14. The relevant question is therefore a factual one: whether these Arresting Officers' conduct violated those rights. *See Pearson*, 555 U.S. at 237; *Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769 (2007).

"[P]olice officers who . . . had probable cause for their actions or 'who reasonably but mistakenly conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity.'" *Garlanger v. Verbecke*, 223 F. Supp. 2d 596, 606 (D.N.J. 2002) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997)); *see also Luthe v. City of Cape May*, 49 F.Supp.2d 380, 391 (D.N.J. 1999). As to false arrest, false imprisonment, and illegal search and seizure, the factual inquiry is whether the information in the possession of the arresting officers was sufficient to constitute probable cause.[5] *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000). Sometimes the information available to the officers is well-defined, permitting a definitive ruling as to probable cause. Here, however, as discussed above at pp. 6–8, the surrounding facts are disputed. I cannot find, at this early pleading stage, that qualified immunity exists.

---

[5] The Arresting Officers do not now claim that they are entitled to qualified immunity as to the excessive force claim, which is, if anything, even more dependent on the development of a factual record.

11

In summary, as to the Arresting Officers, the Complaint states sufficient facts to state the claims alleged in Counts 1, 2, 3, 5 and 6. It will be necessary to develop the factual record in order to determine whether probable cause existed and whether qualified immunity applies. Therefore, the motion to dismiss the complaint against the Arresting Officers, Mahoney, Saroshinsky, and Popowski, is **DENIED**.

### B. Sgt. Amato

Sgt. Amato was another of the Bayonne PD officers at the scene. Compl. ¶ 21. The Complaint alleges that, when Officers Mahoney, Saroshinsky, and Popowski approached Rios from behind as he walked away from his car, Sgt. Amato was close by. *Id.* ¶ 34. Amato allegedly stood "a few feet away" as those Arresting Officers placed Rios under arrest. *Id.* ¶ 38. After Rios was thrown to the ground and assaulted, Amato allegedly instructed Saroshinsky to move the police cruiser to block any passersby from seeing Rios. *Id.* ¶ 49. Amato is not accused of personally arresting, searching, or assaulting Rios.

A police officer has certain public duties, and therefore is no ordinary bystander. An officer may be held liable under Section 1983 for failing to intervene to prevent a constitutional violation that occurs in his or her presence. *See Smith v. Mesinger*, 293 F.3d 641, 650 (3d Cir. 2002) (holding that corrections officer's failure to intervene in beating can form basis of liability for Eighth Amendment claim); *Fears v. Beard*, No. 12-4564, 2013 WL 3834399, at *3 (3d Cir. July 25, 2013) (not precedential); *see also Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Putman v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). To state a claim for bystander liability, a plaintiff must establish that the officer "observe[d] or had reason to know: (1) that excessive force [was] being used; (2) that a citizen was being unjustifiably arrested; or (3) that any constitutional violation [was being] committed by a law enforcement official." *Merman v. City of Camden*, 824 F.Supp. 2d 581, 600 (D.N.J. 2010) (citing *Herrera v. City of New Brunswick*, No.

04-3002, 2008 WL 305275, at *10, 2008 U.S. Dist. LEXIS 7532, at *29 (D.N.J. Feb. 1, 2008); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). An officer is liable only if there is a "realistic and reasonable opportunity to intervene." *Mesinger*, 293 F.3d at 651 (citing *Clark*, 783 F.2d at 1007; *Putman*, 639 F.2d at 423-24). The rank of the officer does not affect his or her liability. *Id.*

An allegation of *Mesinger* bystander liability must be analyzed in light of the requirement that a Section 1983 plaintiff plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937 (2009). It follows that a Section 1983 Complaint cannot avoid dismissal based on a mere allegation of *respondeat superior* or some other form of vicarious liability. *See id.* That requirement does not, however, exculpate an officer who sees a constitutional violation in progress and decides to do nothing about it. *See Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (extending *Mesinger* liability where officer failed to intervene in inmate-on-inmate assault). The "approving silence" of an officer who observes a constitutional violation may be regarded as a tacit endorsement of, and contribution to, that violation. *See Mesinger*, 293 F.3d at 651.

The Complaint alleges that Sgt. Amato witnessed the unconstitutional arrest, search and seizure, and assault of Rios. *See* Compl. ¶¶ 21, 34–46. Following the assault, Amato allegedly instructed Saroshinsky to move the police cruiser so as to block potential witnesses from seeing Rios's plight. *Id.* ¶ 49. Amato was allegedly present during the alleged violations; moreover, as the supervising officer, he would have had the opportunity to intervene. This goes beyond *respondeat superior* or vicarious liability. Taking these allegations as true, as I must for purposes of this motion only, I find a sufficient basis for a claim that Amato was personally involved in the false arrest, false imprisonment, illegal search and seizure, and use of excessive force alleged in Counts 1, 2, 3, 5 and 6 of the Complaint.

As to Sgt. Amato, then, the motion to dismiss is **DENIED**. As with the Arresting Officers, see Section II.A, above, it will be necessary to develop the factual record to determine (1) whether probable cause existed for the arrest and search, and (2) whether qualified immunity applies to Sgt. Amato's actions.

### C. Lt. Deczynski

Lt. Deczynski has filed a separate motion to dismiss the Complaint as against himself alone. (Docket No. 13). The Complaint asserts claims against Lt. Deczynski in his official and individual capacities. He is alleged to have participated in the unconstitutional conduct by reviewing and approving the police report later filed by Officers Mahoney and Saroshinsky regarding the incident. Compl. ¶¶ 15, 51. Rios does not allege that Deczynski knew or should have known that the police report was false. These allegations therefore are not sufficient to state a Section 1983 claim against Lt. Deczynski.

Deczynski was not present at the scene of the arrest. The Complaint does not allege that he possessed any knowledge of the incident independent of the police report he reviewed. By the time that Deczynski first reviewed the police report, Rios had already allegedly been arrested, searched, and assaulted. It is conceivable that Lt. Deczynski could have contributed to the length of Rios's false detention if he had known that the police report was false and ignored that falsity. The Complaint, however, does not allege a single fact that suggests that Deczynski had such knowledge. No allegation in the Complaint, however liberally construed, suggests that Deczynski was personally involved in the alleged false arrest and imprisonment, illegal search and seizure, or use of excessive force. *See Iqbal*, 556 U.S. at 576 (requiring that the individual's own actions violated the Constitution).

Deczynski's motion to dismiss (Docket No. 13) will therefore be **GRANTED**. Should additional relevant facts emerge, Plaintiff Rios may move to amend his Complaint pursuant to Rule 15(a), Fed. R. Civ. P.

### D. Chief Kubert

Bayonne Chief of Police Robert Kubert joins Officer Mahoney's motion to dismiss the Complaint. (Docket No. 31). The Complaint asserts claims against Chief Kubert in his official and personal capacities. Compl. ¶ 14.

The Complaint does not contain any allegations that Chief Kubert was personally involved in Rios's arrest, the search and seizure, or any of the other relevant events of August 29, 2010. As noted above, *respondeat superior* is not available. The only potential theory of liability here is supervisory liability.

A supervisor, such as a chief of police, may be held liable under Section 1983 and the NJCRA if that supervisor was "involved personally, meaning through personal direction or actual knowledge and acquiescence, in the wrongs alleged." *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Delbridge v. Schaeffer*, 238 N.J. Super 323, 354, 569 A.2d 872, 887-88 (applying personal involvement standard in tort claim against state officials and agencies); *Hottenstein*, 2013 WL 5603839 at *6 (NJCRA is interpreted analogously to Section 1983).

The Complaint does not state, even in conclusory terms, that Chief Kubert directed the officers who arrested, searched, and assaulted him, or even that Kubert had actual knowledge of those events. Still less does it contain any concrete factual allegation to support such a claim.

Chief Kubert's motion to dismiss the Complaint as against himself will therefore be **GRANTED**. Should additional relevant facts emerge, Plaintiff Rios may move to amend his Complaint pursuant to Rule 15(a), Fed. R. Civ. P.

### E. Bayonne

The allegations stated in Counts One, Two, and Three are incorporated against Bayonne in Count Four. Compl. ¶ 74. Bayonne has joined in Officer

Mahoney's motion to dismiss. (Docket No. 31). These municipal parties, however, do not stand in the same shoes as Mahoney. Municipal liability was not separately briefed, but I consider it here.

### 1. 42 U.S.C. § 1983

Municipal bodies sued under Section 1983 are not entitled to absolute immunity. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 701, 98 S.Ct. 2018 (1978). Neither, however, can they be held liable solely under the doctrine of *respondeat superior*. For a municipality to be liable, the constitutional violation must have occurred pursuant to an official municipal policy or custom. *Id.*; *Bielevicz v. Dubinon*, 915 F.2d 845, 849-50 (3d Cir. 1990).

A government policy and a government custom are distinct. *Bielevicz*, 915 F.2d at 850. A "policy" may be found when a decision-maker with the requisite final authority issues an official edict, proclamation, or policy. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292 (1986)). A "custom" may be found where "a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480). Whether alleging a policy or custom, the plaintiff must show that an official with the necessary authority is responsible for either the "affirmative proclamation of a policy or acquiescence in a well-settled custom." *Id.* (citing *Andrews*, 895 F.2d at 1480). Finally, the plaintiff must show that the municipal policy or custom was the proximate cause of the injuries suffered. *Id.*

Rios attempts to meet this standard by alleging that Bayonne "acted under color of law pursuant to an official policy or custom and practice." Compl. ¶ 77. He further alleges that Bayonne "intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control and discipline on a continuing basis its employees, agents and/or

servants and/or otherwise failed to prevent the individual defendants" from acting unlawfully; that Bayonne knew or should have known of the conduct; and that Bayonne "intentionally, knowingly, or with deliberate indifference failed or refused to prevent [its] commission and/or omission." *Id.* ¶¶ 77–78. Therefore, Rios alleges, Bayonne approved or ratified the unlawful conduct. *Id.* ¶ 79.

One possible theory of liability is that Bayonne had an express "policy" authorizing the alleged conduct of the police. No such policy is identified in the Complaint. *See Bielevicz*, 815 F.2d at 851.

Failing that, Rios must establish the existence of a municipal "custom." That "custom" theory of liability requires that decision-makers were aware of similar unlawful conduct in the past, that they failed to take precautions against further violations, and that this failure caused the plaintiff's injury. *Id.* The Complaint is devoid of facts on this score; it consists of nothing but legal boilerplate—precisely the kind of "formulaic recitation of the elements of a cause of action" that was held inadequate in *Twombly*, 550 U.S. at 555.

Rios's blanket recitation that Bayonne acted pursuant to an official policy or custom and practice is not enough to state a plausible *factual* claim that these municipal entities are liable under Section 1983. *See* Compl. ¶¶ 77–78. The Complaint does not state what the alleged policy or custom consisted of, or where it had its source. Rios fails to allege even a single other case of similar misconduct in support of his "custom" theory. Additionally, he fails to allege facts to suggest that any such policy or custom was the cause of the injuries he suffered. *See Bielevicz*, 815 F.2d at 851.

As to Bayonne, the motion to dismiss the claims under 42 U.S.C. § 1983 is **GRANTED**.

## 2. N.J. Stat. Ann. § 10:6-2

Rios's State constitutional claims under NJCRA, by contrast, do not require a policy or custom in order to extend to Bayonne. This issue, too, was not briefed by the parties, but is critical to the further progress of this action.

Bayonne's liability for the State claims is governed by the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:2-2 *et seq.* The Act provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment." *Id.* A municipality, however, is not liable for "the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10. Although "willful misconduct" is not defined, in the context of a police officer enforcing the law it will ordinarily be limited to "a knowing violation of a specific command by a superior, or a standing order, that would subject that officer to discipline." *Fielder v. Stonack*, 141 N.J. 101, 125, 661 A.2d 231, 243 (1995).

Rios's NJCRA municipal liability claim must therefore be dismissed if the responding officers' alleged violations rose to the level of a crime or willful misconduct. *Id.* at 123. In such a case, the plaintiff could not recover from the municipality, but could likely recover personally from the officers. *See Gilmore v. Reilly*, No. 09-5956 (DRD), 2010 WL 1462879, at *9 (D.N.J. April 9, 2010). Conversely, if the violations were within the scope of the responding officers' employment and did not constitute willful misconduct, the municipal claim would be sustained but the likelihood of recovering personally from the officers would be slim. *See id.*

The allegations of the Complaint might plausibly be read either way. Even assuming that misconduct took place, a developed factual record could reveal that the police officers (a) acted illegally, willfully and criminally; or (b) incorrectly, but within the scope of their employment. The overall tenor of the

Complaint suggests the former reading, and at some point, Rios may have to definitively choose one theory of liability. That choice may, as a practical matter, foreclose claims against either Bayonne or the individual officers. At the pleading stage, however, a plaintiff is permitted to set forth inconsistent factual and legal theories. Fed. R. Civ. P. 8(e)(2); *Indep. Enter. Inc. v. Pittsburgh Water and Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997). A court therefore, for example, "may not construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim." *Id.* at 1175 (quoting *Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. 1994)).

As to Bayonne, the Complaint fails to state a claim for municipal liability under Section 1983. It does, however, contain sufficient factual allegations to state a claim under the NJCRA. The motion to dismiss Count 4 of the Complaint is thus **GRANTED** as to the Section 1983 claim and **DENIED** as to the NJCRA claim. Should additional relevant facts emerge, Plaintiff Rios may move to amend his Complaint pursuant to Rule 15(a), Fed. R. Civ. P.

### III. Conclusion

For the foregoing reasons, the motions to dismiss the Complaint (Docket Nos. 13, 27, 30, 31, 34) are:

1. **DENIED** as to Counts 1, 2, 3, 5 and 6 against Officers Mahoney, Saroshinsky, and Popowski;
2. **DENIED** as to Counts 1, 2, 3, 5 and 6 against Sgt. Amato;
3. **GRANTED** as to Lt. Deczynski on all Counts;
4. **GRANTED** as to Chief Kubert on all Counts;
5. **GRANTED in part** as to Count 4 under 42 U.S.C. § 1983 against Bayonne;
6. **DENIED in part** as to Count 4 under N.J. Stat. Ann. § 10:6-2 against Bayonne.

19

An Order will be entered in accordance with this Opinion.

KEVIN MCNULTY, U.S.D.J.

Date: November 12, 2013