UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Jason RIOS,** | Civ. No. 2:12-4716 |
| **Plaintiff,** | (KM)(MAH) |
| v. | **OPINION** |
| **CITY OF BAYONNE et al.,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

    On February 9, 2015, Magistrate Judge Michael A. Hammer denied the motion of all Defendants to continue a stay of discovery due to an ongoing parallel criminal investigation, pursuant to Fed. R. Civ. P. 26(c). (*See* Order, ECF No. 131; Transcript of Feb. 9, 2015 Ruling 11:2–12:15 ("Feb. 9, 2015 Tr."), ECF No. 134-2, Ex. F). One defendant, Officer James Mahoney, has appealed that ruling to this Court. (ECF No. 134). For the reasons expressed by Magistrate Judge Hammer in his ruling, as well as those set forth below, the appeal is DENIED.

    **I.    BACKGROUND**[1]

    On July 30, 2012, Plaintiff Jason Rios filed a civil rights complaint against the City of Bayonne; the Bayonne Police Department; Chief of Police Robert Kubert; Lt. Robert Deczynski; Sgt. Franco Amato; Officer James Mahoney; Officer Joseph Saroshinsky; Officer Roman Popowski;

---

[1]    A more detailed description of the facts is included in my Memorandum Opinion regarding the Defendants' motion to dismiss, dated November 12, 2013. (ECF No. 70).

1

and John Does 1–10. (Compl., ECF No. 1). Rios alleged six causes of action in his complaint: (1) false arrest and imprisonment under 42 U.S.C. § 1983 (*Id.* ¶¶ 58–62); (2) illegal search and seizure under 42 U.S.C. § 1983 (*Id.* ¶¶ 63–67); (3) excessive force under 42 U.S.C. § 1983 (*Id.* ¶¶ 68–73); (4) municipal liability under 42 U.S.C. § 1983 and N.J. Stat. Ann. § 10:6-2 (*Id.* ¶¶ 74–79); (5) false arrest and imprisonment, illegal search and seizure, and excessive force under N.J. Stat. Ann. § 10:6:2 (*Id.* ¶¶ 80–90); and (6) illegal search and seizure under the New Jersey Constitution (*Id.* ¶¶ 91–95). On November 12, 2013, I granted motions to dismiss all claims against Lt. Deczynski and Chief Kubert, and granted the motion to dismiss Count 4 under 42 U.S.C. § 1983 as against the City of Bayonne and the Bayonne Police Department. (*See* Mem. Op., ECF No. 70; Order, ECF No. 71).

### a. Incident

On August 29, 2010, Rios called 911 to report that his vehicle was on fire behind his residence at 72 West 33rd Street, Bayonne, New Jersey. (*Id.* ¶19). Members of the Bayonne Fire Department and the Bayonne Police Department ("Bayonne PD"), including Defendants Amato, Mahoney, Saroshinsky, and Popowski, were dispatched to the scene. (*Id.* ¶21). Rios alleges that after the fire was extinguished, he walked over to the vehicle to assess the damage and was advised by firefighter Christopher Pellicca not to touch the vehicle, which was still smoldering. (*Id.* ¶¶26–28). Rios alleges that he obeyed Pellicca's order but "became upset" upon seeing the damage to his car. (*Id.* ¶¶ 30–31). Pellicca then allegedly "smirked and made an insensitive remark," to which Rios responded. (*Id.* ¶¶32–33).

Then, Rios alleges that as he was walking away from the car, Mahoney, Saroshinsky, Popowski, and Amato approached him from behind. (*Id.* ¶¶33–34). Rios alleges that the officers pepper-sprayed the back of his head and his face, put him on the ground, and arrested him.

2

(*Id.* ¶¶35–38). Following this, Mahoney allegedly brought Rios to a hose, flushed Rios's eyes, and then escorted Rios to a police car. (*Id.* ¶¶39–40).

At this point, Mahoney, Saroshinsky, and Popowski allegedly patted down Rios, who was handcuffed. (*Id.* ¶¶41–43). Rios alleges that Mahoney then threw him face-first into the concrete, and that all three of the officers physically assaulted him. (*Id.* ¶¶44–45). As a result, Rios lost consciousness. (*Id.* ¶46).

Amato then allegedly told Saroshinsky to move the police car and told the Bayonne Fire Department to move the fire engine so as to block the onlookers who had congregated in the area. (*Id.* ¶¶47–49).

Rios accuses Mahoney and Saroshinsky of authoring a false police report relating to the incident. (*Id.* ¶51). Rios also alleges that Mahoney "falsely swore" in Complaint 0901-W-2010-01176 that Rios had resisted arrest in violation of N.J. Stat. Ann. § 2C:29-2A(1) and had obstructed an arson investigation in violation of N.J. Stat. Ann. § 2C:29-1(b). (*Id.* ¶52).

### b. Procedural history

On October 25, 2013, all of the defendants moved to stay discovery because there was an ongoing criminal investigation of them regarding the same incident. (*See* Defs. Mot. to Stay, ECF No. 67 (brief at 68-4)). The defendants argued that discovery could not continue because the defendants would either have to invoke the Fifth Amendment or risk incriminating themselves, either in depositions or by the act of producing documents in discovery.

On August 14, 2013, the fire and police departments were served with grand jury subpoenas from the U.S. Attorney's Office for the District of New Jersey ("USAO") related to the August 29, 2010 incident; the subpoenas mentioned the officers at the scene by name. (*See* Transcript of Nov. 18, 2013 Hearing ("Nov. 18, 2013 Tr."), ECF No. 134-2, Ex. B,

10:4–7, 19:9–20:21; *see also* Davie Cert.[2] ¶4, ECF No. 64). The government also subpoenaed the Internal Affairs Unit's files. (*Id.* 24:4–8). The individual defendants, however, were not subpoenaed. (*Id.* 32:24–33:1). In addition, Mahoney's attorney, Mr. Till, stated at oral argument before Judge Hammer "that there were statements made to, not to [Till], but to other counsel that indictment [of the officers] was imminent." (*Id.* 36:9–11; *see also* 45:5–8). Rios was also "summoned to speak with federal law enforcement" regarding the federal criminal investigation of the defendants. (*Id.* 63:4–7 (quoting Pl. Opp. to Defs. Mot. to Stay at 2, ECF No. 69)).

On November 18, 2013, Judge Hammer held a hearing and ruled on the first motion to stay discovery. (*See id.*). In his ruling, he properly analyzed the *Walsh* factors in determining whether to grant a stay. *See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998). First, Judge Hammer found that there was an ongoing federal criminal investigation regarding the August 29, 2010 incident and that there was a "high probability of at least some significant overlap between the grand jury investigation and the discovery in this matter." (Nov. 18, 2013 Tr. 62:13–63:23). Second, Judge Hammer determined that, although the criminal case was in the pre-indictment stage, the issuance of subpoenas suggested the defendants themselves were being investigated. It followed that, if discovery should continue in the current case, the defendants might have to choose between (1) the risk of incriminating themselves in depositions; or (2) invoking their Fifth Amendment rights and potentially subjecting themselves to an adverse inference in the current case. (*Id.* 64:2–69:5 (noting that the production of documents would not be stayed)). Third, Judge Hammer found that Rios would not suffer substantial prejudice during a stay because Rios

---

[2]   The Certification of Kenneth P. Davie, dated October 7, 2013, submitted in support of the defendants' motion to seal; ECF No. 62 = Davie Cert.

could still interview witnesses and develop his case. (*Id.* 69:6–70:11). Fourth, Judge Hammer determined that the Court had an interest in staying proceedings because without a stay, defendants would likely invoke the Fifth Amendment in depositions, making the discovery process inefficient and "burden[ing] the Court with a constant stream of privilege issues." (*Id.* 70:12–71:2). Fifth, Judge Hammer found that the public interest did not weigh in favor of either party. (*Id.* 71:3–8). Balancing all of the *Walsh* factors, Judge Hammer concluded that they weighed in favor of granting a stay, and he stayed the depositions for a period of 90 days. (*Id.* 71:9–18). Document discovery, however, was not stayed. (*Id.* 71:18–20).

On May 27, 2014, Judge Hammer held oral argument regarding whether the stay should be treated as having expired. (*See* Transcript of May 27, 2014 Hearing ("May 27, 2014 Tr."), ECF No. 134-2, Ex. C).

On September 22, 2014, Judge Hammer heard the parties' arguments as to whether to extend the stay. (*See* Transcript of September 22, 2014 Hearing ("Sept. 22, 2014 Tr."), ECF No. 134-2, Ex. D). At the hearing, Rios's counsel, Mr. Aboushi, informed Judge Hammer that FBI Agent Laura Rugler[3] told his co-counsel, Mr. Silberman, "that the FBI completed their investigation and were not moving forward with any charges against the defendants." (*Id.* 11:11–18). Mr. Till confirmed that the defendants had no reason to disbelieve this representation. (*Id.* 12:3–12). Seemingly Mr. Till had no particular reason to believe it, either, because he asked Judge Hammer for a Fed. R. Evid. 104 hearing on the issue of whether there was a pending criminal investigation. (*Id.* 12:3–6; 13:16–20). Because it was unclear at that point whether the government had concluded its investigation of the officers, Judge Hammer continued the stay, for the same reasons as he articulated in his original ruling on November 18, 2013, and scheduled an additional hearing on December

---

3   The spelling of the FBI Agent's name is phonetic in the transcript.

5

10, 2014. (*Id.* 28:8–16). Judge Hammer also instructed Mr. Aboushi to send notice to the USAO regarding the December 10, 2014 hearing so that they could appear if they wished. (*Id.* 30:1–4).

On December 10, 2014, Judge Hammer conducted a hearing regarding the stay and received updates as to the status of any government investigations. (*See* Transcript of December 10, 2014 Hearing ("Dec. 10, 2014 Tr."), ECF No. 134-2, Ex. E). Defendants Saroshinsky and Mahoney received letters informing them that (1) they were no longer targets of a criminal investigation by the DOJ Civil Rights Division and (2) the USAO took no position with respect to whether the current civil proceedings should be stayed. (*Id.* 4:6–6:21). Counsel for Mahoney, Mr. Till, said that the AUSA Eicher had represented to him that the USAO would not take a position as to whether it was investigating Mahoney. (*Id.* 7:24–8:10). Mr. Till nevertheless argued that he remained concerned about a potential USAO investigation for two reasons: (1) because the letters to Saroshinsky and Mahoney included the following disclaimer: "Please be advised that [the DOJ Civil Rights Division's] conclusion in this matter does not preclude other components of the U.S. Department of Justice from taking action where appropriate under their separate enforcement authority," (*Id.* 12:8–17); and (2) because the USAO took no position with respect to a stay in the current matter, which led Mr. Till to an "inference" that USAO has "left all their options open." (*Id.* 12:18–25). Counsel for defendants Saroshinsky and Popowski, Ms. Garcia, also noted that she remained concerned about the USAO subpoenas that were part of the basis for Judge Hammer's first imposition of a stay. (*Id.* 16:8–18:13). Till and Garcia acknowledged, however, that neither of them had asked the USAO for an update since one year before the December 10, 2014 hearing. (*Id.* 18:9–25). Judge Hammer noted that Amato and Popowski had not received letters informing them that they were no longer targets of a DOJ investigation.

6

(*Id.* 20:10–21:17). At that point, plaintiff Rios's counsel, Mr. Silberman, added that he had received a letter from the DOJ Civil Rights Division (ECF No. 116-1) stating that their investigation was closed. (*Id.* 24:15–22). That letter reads in pertinent part as follows:

> We recently completed our review of the results of the investigation to determine whether a federal criminal prosecution could be brought concerning allegations that the civil rights of Mr. Jason Rios were violated by officials of the Bayonne Police Department. After careful consideration, we concluded that the evidence does not establish a prosecutable violation of the federal criminal civil rights statutes. Accordingly, we have closed our investigation and, based on current information, do not plan to take any further action.

(DOJ Letter Oct. 3, 2015, ECF No. 116-1).

After receiving all of this information, Judge Hammer adjourned the proceedings and continued the stay, with instructions for the parties to return with the following information: (1) whether Popowski and Amato had received a similar letter informing them that they are not targets of a DOJ investigation; and (2) whether the USAO was willing to say any more about a potential investigation of Mahoney. (Dec. 10, 2014 Tr. 30:9–31:21).

On February 9, 2015, Judge Hammer held a final hearing regarding the stay issue. (*See* Feb. 9, 2015 Tr., ECF No. 134-2, Ex. F). Before that hearing, the parties submitted letters in response to Judge Hammer's requests for information. (*See* Landis Jan. 26, 2015 Letter, ECF No. 127; Till Jan. 26, 2015 Letter, ECF No. 128). The parties' responses stated that the DOJ Civil Rights Division had closed its investigation and that the USAO had "invoked its policy of not indicating one way or the other whether there was an open or closed investigation." (Feb. 9, 2015 Tr. 4:25–5:11; *see* Landis Jan. 26, 2015 Letter; Till Jan. 26, 2015 Letter). At the hearing, Mr. Till confirmed that he had no

knowledge of any open or ongoing criminal investigation of Mahoney. (Feb. 9, 2015 Tr. 5:16–21). Mr. Till also mentioned his concern over Mahoney's potential involvement in other civil rights cases involving the City of Bayonne and an indictment against an officer of the Bayonne PD for civil rights violations.[4] (*Id.* 6:2–7:21). Specifically, Mr. Till spoke of "broad-based allegations of an environment of civil rights violations in the City of Bayonne and its police department," as evidenced by these cases. (*Id.* 7:19–21). Mr. Silberman responded to these concerns by pointing out that he was actually counsel to the plaintiff in one of these cases and could represent to the Court that Mahoney was in no way involved. (*Id.* 8:1–10). To this, Mr. Till replied that he was still concerned that Mahoney might be involved in a future case based on the "culture of behavior in the Bayonne police department." (*Id.* 10:2–14).

Having heard the parties' arguments, Judge Hammer denied Mr. Till's request to stay this civil litigation. (*See id.* 11:2–12:15; Order, ECF No. 131). Judge Hammer noted that "the only criminal investigation that anybody was actually aware of has since now been verified by the Civil Rights Division to have been closed," and that the parties had no knowledge of any active investigation by the USAO. (*Id.*). As to Mr. Till's more general concerns about other civil cases and the culture of behavior by the Bayonne PD, Judge Hammer reasoned that "if [he] stayed the litigation because of the mere threat" of a lawsuit involving Mahoney, then he would essentially have to stay the current case until the statute of limitations had run on any potential criminal offenses. (*Id.*). Judge Hammer concluded that there was no basis to believe any agency of the

---

[4]   Mr. Till was referring to the current civil rights lawsuit by Brandon and Kathy Walsh against the City of Bayonne, officers of the Bayonne Police Department, and John Does 1–25, pending before Judge Katharine S. Hayden of this district (Civ. No. 14-7186 (KSH-CLW)), as well as the criminal civil rights case against Officer Domenico Lillo that is pending before this Court (Crim. No. 15-0043 (KM)). Mr. Till also referred to a case pending against a defendant named "Johnson." (Feb. 9, 2015 Tr. 9:13–21).

federal government was conducting an investigation into Mahoney or the incident giving rise to this litigation.

Mahoney now appeals Judge Hammer's order denying his request for a stay of litigation. (ECF No. 134).

## II. DISCUSSION

### a. Standard of Review

The standard of review of a magistrate judge's report and recommendation as to dispositive matters is *de novo*. As to a non-dispositive ruling, however, review is more deferential. Pursuant to Federal Rule of Civil Procedure 72(a), "a district court may reverse a magistrate judge's determination of a non-dispositive motion only if it is 'clearly erroneous or contrary to law.'" *See also* 28 U.S.C. § 636; L. Civ. R. 72.1(c)(1)(A); *Haines v. Liggett Group*, 975 F.2d 81, 92 (3d Cir. 1992); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986). Moreover, as to a "discretionary matter . . . courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." *Halsey v. Pfeiffer*, No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010) (internal quotations and citation omitted); *see also Cooper Hospital/Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998); *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996).

Ultimately, however, the standard of review matters little. I have carefully reviewed the transcripts of the five proceedings before Judge Hammer on the issue of the stay (ECF No. 134-2, Ex. B–F), and find myself in agreement with his ruling on February 9, 2015. Even reviewing the decision *de novo* as a report and recommendation, I would adopt and affirm his well-reasoned decision, which was entered after thorough review of the facts.

### b. Review of Judge Hammer's Order

Courts consider the following factors in deciding whether to stay civil proceeding in favor of a pending criminal matter:

> 1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest.

*Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998).

As Rios points out, the stay analysis begins and ends with the first two factors. (Rios Opp. Br. 4, ECF No. 140). Mahoney cannot point to any current ongoing criminal investigation—much less an actual indictment—involving him, the other defendants, or the incident generally. In short, there is no pending parallel proceeding, and therefore no basis to order a stay.

Mahoney argues that Judge Hammer "failed to take into account the clear and unmistakable uncertainty surrounding any investigation by Federal agencies within the District of New Jersey, such as the Federal Bureau of Investigation or the United States District Attorney for the District of New Jersey." (Mahoney App. Br. 12–13, ECF No. 134-1). Specifically, Mahoney states that "Counsel for the Plaintiff has otherwise repeatedly asserted (both on and off the record) that an investigation was under way by the [FBI] and/or the [USAO]. . . . Since then, there has been absolutely no substantive evidence or assurances from the [FBI or USAO] that a criminal investigation is closed." (*Id.* 13). In so arguing, Mahoney misstates the burden in this case. It is not the DOJ's, the USAO's, the FBI's, or Rios's burden to dispel Mahoney's "uncertainty" about whether there is a criminal investigation pending. Rather, it is

Mahoney's burden to demonstrate the existence of some criminal matter, pending which this Court should stay the current litigation. Mahoney has not done so. The DOJ has confirmed that its investigation is closed. (DOJ Letter Oct. 3, 2015, ECF No. 116-1). The USAO has availed itself of its policy to not reveal whether or not an investigation is ongoing. (Feb. 9, 2015 Tr. 4:25–5:11; see Landis Jan. 26, 2015 Letter; Till Jan. 26, 2015 Letter).

Mahoney's only basis for believing that the USAO may be investigating the incident are (1) subpoenas to the Bayonne police and fire departments by the USAO on or about August 2013 (Mahoney Reply Br. 4, ECF No. 142 (citing Davie Cert ¶4)); and (2) statements by Rios's counsel at conferences on November 12, 2012, September 17, 2013, and October 11, 2013 that an FBI investigation was ongoing, that Rios and his counsel had been interviewed by the FBI, and that an indictment was "imminent" (Id. 3–4 (citing Davie Cert. ¶10; Davie 2nd Cert.[5] ¶3; Davie 3rd Cert.[6] ¶¶7–8; Silberman Cert.[7] ¶3; Rios Opp. to Mot. to Seal. 2–5, ECF No. 64)). It is telling that there have been no additional signs of an FBI or USAO investigation since 2013. Also, Rios's counsel, Mr. Aboushi, confirmed that FBI Agent Laura Rugler told his co-counsel, Mr. Silberman, "that the FBI completed their investigation and were not moving forward with any charges against the defendants." (Sept. 22, 2014 Tr. 11:11–18). Moreover, as Judge Hammer noted, it would be unusual for the USAO to institute a civil rights prosecution after the DOJ had concluded that the circumstances did not warrant such a

---

[5] The second Certification of Kenneth P. Davie, dated October 22, 2013, submitted in further support of the defendants' motion to seal; ECF No. 65 = Davie 2nd Cert.

[6] The third Certification of Kenneth P. Davie, dated November 12, 2013, submitted in further support of the defendants' motion to stay; ECF No. 72 = Davie 3rd Cert.

[7] The Certification of Joel Silberman, dated October 10, 2013, submitted in opposition to defendants' motion to seal; ECF No. 64-1 = Silberman Cert.

prosecution. (Dec. 10, 2015 Tr. 8:21–9:9).

Mahoney asks this Court to stay this case pending assurances that will likely never come. As Judge Hammer noted, the most that the FBI or the USAO could ever say is that their investigation is closed for now. (Sept. 22, 2014 Tr. 14:19–25). And the closure of one agency's investigation would not absolutely rule out another agency's commencement of its own investigation. (*Id.* 15:19–24). Mahoney will always face the choice of either testifying or asserting his Fifth Amendment right to remain silent—at least until the statute of limitations on any potential criminal offense relating to this incident runs out.

I also concur with Judge Hammer's denial of Mahoney's request for a "Rule 104 hearing" to question FBI Agents K.I. Davis and Laura Rubler regarding the status of any potential investigation. (Mahoney App. Br. 14) Such a hearing would be fruitless. However unsatisfied Mahoney may be with the responses of the FBI and the USAO (*See* Landis Jan. 26, 2015 Letter, ECF No. 127; Till Jan. 26, 2015 Letter, ECF No. 128), there is no indication that any more information is available from the agencies.

In sum, I find no clear error of fact, error of law, abuse of discretion, or error of any kind in Judge Hammer's well-reasoned ruling, which I affirm and adopt.

### III. CONCLUSION

Accordingly, based on this Opinion and the reasons expressed by Judge Hammer, Mahoney's appeal (ECF No. 134) of Judge Hammer's order is DENIED.

*Kevin McNulty* [signature]
**Kevin McNulty**
**United States District Judge**