UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Jason RIOS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BAYONNE et al.,<br><br>Defendants. | Civ. No. 2:12-4716<br>(KM)(MAH)<br><br>OPINION & ORDER |

**KEVIN MCNULTY, U.S.D.J.:**

      This matter comes before the Court upon Defendant Officer James Mahoney's motion for reconsideration (ECF No. 150) of this Court's April 8, 2015 Opinion and Order (ECF Nos. 144, 145). That April 8 Order denied Mahoney's appeal of Judge Hammer's refusal to stay discovery.

      For the reasons set forth below, Mahoney's motion for reconsideration is DENIED.

**I.   BACKGROUND**[1]

      This action arose out of an August 29, 2010 incident between Rios and defendant members of the City of Bayonne's Police and Fire Departments.

      On October 25, 2013, all of the defendants moved to stay discovery because there was an ongoing criminal investigation of them regarding the same incident. (*See* Defs. Mot. to Stay, ECF No. 67 (brief at 68-4)).

---

[1]   A more detailed description of the facts is included in my April 8, 2015 Opinion (ECF No. 144), as well as a companion opinion filed today.

1

The defendants argued that discovery could not continue because the defendants would either have to invoke the Fifth Amendment or risk incriminating themselves, either in depositions or by the act of producing documents in discovery.

On August 14, 2013, the fire and police departments were served with grand jury subpoenas from the U.S. Attorney's Office for the District of New Jersey ("USAO") related to the August 29, 2010 incident. The subpoenas mentioned the officers at the scene by name. (*See* Transcript of Nov. 18, 2013 Hearing ("Nov. 18, 2013 Tr."), ECF No. 134-2, Ex. B, 10:4–7, 19:9–20:21; *see also* Davie Cert.[2] ¶4, ECF No. 64). The government also subpoenaed the Internal Affairs Unit's files. (*Id.* 24:4–8). The individual defendants, however, were not subpoenaed. (*Id.* 32:24–33:1). In addition, Mahoney's attorney, Mr. Till, stated at oral argument before Judge Hammer "that there were statements made to, not to [Till], but to other counsel that indictment [of the officers] was imminent." (*Id.* 36:9–11; *see also* 45:5–8). Rios was also "summoned to speak with federal law enforcement" regarding the federal criminal investigation of the defendants. (*Id.* 63:4–7 (quoting Pl. Opp. to Defs. Mot. to Stay at 2, ECF No. 69)).

On November 18, 2013, Judge Hammer held a hearing and ruled on the defendants' first motion to stay discovery. (*See id.*). In his ruling, he balanced the *Walsh* factors and concluded that they weighed in favor of granting a stay for a period of 90 days (except as to document discovery). (*Id.* 71:9–20); *see Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998).

On May 27, 2014, Judge Hammer held oral argument as to whether the stay should be treated as having expired. (*See* Transcript of May 27, 2014 Hearing ("May 27, 2014 Tr."), ECF No. 134-2, Ex. C). The

---

[2] The Certification of Kenneth P. Davie, dated October 7, 2013, submitted in support of the defendants' motion to seal; ECF No. 62 = Davie Cert.

2

stay remained in place.

On September 22, 2014, Judge Hammer heard the parties' arguments as to whether to extend the stay. (*See* Transcript of September 22, 2014 Hearing ("Sept. 22, 2014 Tr."), ECF No. 134-2, Ex. D). At the hearing, Rios's counsel, Mr. Aboushi, informed Judge Hammer that FBI Agent Laura Rugler[3] had told his co-counsel, Mr. Silberman, "that the FBI completed their investigation and were not moving forward with any charges against the defendants." (*Id.* 11:11–18). Mr. Till confirmed that the defendants had no reason to disbelieve this representation. (*Id.* 12:3–12). Mr. Till nevertheless sought a Fed. R. Evid. 104 hearing on the issue of whether a criminal investigation was pending. (*Id.* 12:3–6; 13:16–20). Because it was unclear at that point whether the government had concluded its investigation of the officers, Judge Hammer continued the stay. He scheduled an additional hearing for December 10, 2014. (*Id.* 28:8–16). Judge Hammer also instructed Mr. Aboushi to send notice to the United States Attorney's Office regarding the December 10, 2014 hearing so that they could appear if they wished. (*Id.* 30:1–4).

On December 10, 2014, Judge Hammer conducted a hearing regarding the stay and received updates as to the status of any government investigations. (*See* Transcript of December 10, 2014 Hearing ("Dec. 10, 2014 Tr."), ECF No. 134-2, Ex. E). Defendants Saroshinsky and Mahoney received letters informing them that (1) they were no longer targets of a criminal investigation by the DOJ Civil Rights Division and (2) the USAO took no position with respect to whether the current civil proceedings should be stayed. (*Id.* 4:6–6:21). Counsel for Mahoney, Mr. Till, said that AUSA Eicher had represented to him that the USAO would not take a position as to whether it was investigating Mahoney. (*Id.* 7:24–8:10). Mr. Till nevertheless expressed his ongoing

---

[3] The spelling of the FBI Agent's name is phonetic in the transcript.

concern about a potential USAO investigation for two reasons: (1) The letters to Saroshinsky and Mahoney included the following disclaimer: "Please be advised that [the DOJ Civil Rights Division's] conclusion in this matter does not preclude other components of the U.S. Department of Justice from taking action where appropriate under their separate enforcement authority," (*Id.* 12:8–17) (2) The USAO took no position with respect to a stay in the current matter, which led Mr. Till to an "inference" that USAO has "left all their options open." (*Id.* 12:18–25). Counsel for defendants Saroshinsky and Popowski, Ms. Garcia, also remained concerned about the USAO subpoenas that were part of the basis for Judge Hammer's first imposition of a stay. (*Id.* 16:8–18:13). Till and Garcia acknowledged, however, that neither of them had asked the USAO for an update in the year preceding the December 10, 2014 hearing. (*Id.* 18:9–25). Judge Hammer noted that Amato and Popowski had not received letters informing them that they were no longer targets of a DOJ investigation. (*Id.* 20:10–21:17). At that point, plaintiff Rios's counsel, Mr. Silberman, added that he had received a letter from the DOJ Civil Rights Division (ECF No. 116-1) stating that their investigation was closed. (*Id.* 24:15–22). That letter reads in pertinent part as follows:

> We recently completed our review of the results of the investigation to determine whether a federal criminal prosecution could be brought concerning allegations that the civil rights of Mr. Jason Rios were violated by officials of the Bayonne Police Department. After careful consideration, we concluded that the evidence does not establish a prosecutable violation of the federal criminal civil rights statutes. Accordingly, we have closed our investigation and, based on current information, do not plan to take any further action.

(DOJ Letter Oct. 3, 2015, ECF No. 116-1).

After receiving all of this information, Judge Hammer adjourned the proceedings and continued the stay, with instructions for the parties to return with the following information: (1) whether Popowski and

4

Amato had received a similar letter informing them that they are not targets of a DOJ investigation; and (2) whether the USAO was willing to say any more about a potential investigation of Mahoney. (Dec. 10, 2014 Tr. 30:9–31:21).

On February 9, 2015, Judge Hammer held a final hearing regarding the stay issue. (*See* Transcript of Feb. 9, 2015 Ruling ("Feb. 9, 2015 Tr."), ECF No. 134-2, Ex. F). Before that hearing, the parties submitted letters in response to Judge Hammer's requests for information. (*See* Landis Jan. 26, 2015 Letter, ECF No. 127; Till Jan. 26, 2015 Letter, ECF No. 128). The parties' responses stated that the DOJ Civil Rights Division had closed its investigation and that the USAO had "invoked its policy of not indicating one way or the other whether there was an open or closed investigation." (Feb. 9, 2015 Tr. 4:25–5:11; *see* Landis Jan. 26, 2015 Letter; Till Jan. 26, 2015 Letter). At the hearing, Mr. Till confirmed that he had no knowledge of any open or ongoing criminal investigation of Mahoney. (Feb. 9, 2015 Tr. 5:16–21). Mr. Till also expressed concern over Mahoney's potential involvement in other civil rights cases involving the City of Bayonne and an indictment against an officer of the Bayonne PD for civil rights violations.[4] (*Id.* 6:2–7:21). Specifically, Mr. Till spoke of "broad-based allegations of an environment of civil rights violations in the City of Bayonne and its police department," as evidenced by these cases. (*Id.* 7:19–21). Mr. Silberman replied that he was actually counsel to the plaintiff in one of these cases and could represent to the Court that Mahoney was in no way involved. (*Id.* 8:1–10). To this, Mr. Till replied that he was still concerned that

---

[4] Mr. Till was referring to the current civil rights lawsuit by Brandon and Kathy Walsh against the City of Bayonne, officers of the Bayonne Police Department, and John Does 1–25, pending before Judge Katharine S. Hayden of this district (Civ. No. 14-7186 (KSH-CLW)), as well as the criminal civil rights case against Officer Domenico Lillo that is pending before this Court (Crim. No. 15-0043 (KM)). Mr. Till also referred to a case pending against a defendant named "Johnson." (Feb. 9, 2015 Tr. 9:13–21).

5

Mahoney might be involved in a future case based on the "culture of behavior in the Bayonne police department." (*Id.* 10:2–14).

Having heard the parties' arguments, Judge Hammer denied Mr. Till's request to stay discovery. (*See id.* 11:2–12:15; Order, ECF No. 131). Judge Hammer noted that "the only criminal investigation that anybody was actually aware of has since now been verified by the Civil Rights Division to have been closed," and that the parties had no knowledge of any active investigation by the USAO. (*Id.*). As to Mr. Till's more general concerns about other civil cases and the culture of behavior by the Bayonne PD, Judge Hammer reasoned that "if [he] stayed the litigation because of the mere threat" of a lawsuit involving Mahoney, then he would essentially have to stay the current case until the statute of limitations had run on any potential criminal offenses. (*Id.*). Judge Hammer concluded that there was no basis to believe any agency of the federal government was conducting an investigation into Mahoney or the incident giving rise to this litigation.

On February 24, 2015, Mahoney appealed Judge Hammer's denial of his request to stay discovery. (ECF No. 134.) On April 8, 2015, I denied Mahoney's appeal. (April 8, 2015 Opinion, ECF No. 144; Order, ECF No. 145.)

Mahoney now moves for reconsideration of my April 8, 2015 Opinion and Order. (ECF No. 150.) He focuses on Judge Hammer's denial of a Rule 104 hearing.

## II. MOTION FOR RECONSIDERATION
### a. Standard for motion for reconsideration

Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2)

6

when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Carmichael v. Everson*, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004). Local Rule 7.1(i) requires such a motion to specifically identify "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *Id.*; *see also Egloff v. New Jersey Air Nat'l Guard*, 684 F. Supp. 1275, 1279 (D.N.J. 1988). Evidence or arguments that were available at the time of the original decision will not support a motion for reconsideration. *Damiano v. Sony Music Entertainment, Inc.*, 975 F. Supp. 623, 636 (D.N.J. 1997); *see also North River Ins. Co.*, 52 F.3d at 1218; *Bapu Corp. v. Choice Hotels Int'l, Inc.*, 2010 WL 5418972, at *4 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)). Mere disagreement with a holding is properly expressed via an appeal, not a motion for reconsideration. *See Morris v. Siemens Components, Inc.*, 938 F. Supp. 277, 278 (D.N.J. 1996).

### b. Discussion of motion for reconsideration

Mahoney has not presented any new evidence, change in law, or clear error that would warrant reconsideration of his request to hold a Rule 104(a) hearing. Rather, he maintains that it is "absolute[ly] necessary" to "conduct[] a Rule 104 hearing to once and for all conclusively establish whether a criminal investigation of the collective Defendant police officers is ongoing." (Mahoney Recons. Mot. 1–2, ECF No. 150.)

Mahoney disputes this Court's conclusion that a Rule 104 hearing would be fruitless, but he does not offer any evidence to suggest otherwise. Indeed, based on the entire record, including responses from the FBI and the U.S. Attorney's Office, there is no indication that any

investigation of the officers is ongoing. More importantly, there is no indication that any more information is available from either agency, whether in the context of a Rule 104 hearing or not.

As Judge Hammer noted, "the only criminal investigation that anybody was actually aware of has since now been verified by the Civil Rights Division [of the Department of Justice] to have been closed." (Feb. 9, 2015 Tr., ECF No. 134-2, Ex. F, 11:2–12:15; *see also* Till Jan. 26, 2015 Letter, ECF No. 128). The USAO has "invoked its policy of not indicating one way or the other whether there was an open or closed investigation." (Feb. 9, 2015 Tr. 4:25–5:11; *see* Landis Jan. 26, 2015 Letter, ECF No. 127; Till Jan. 26, 2015 Letter). As Judge Hammer and I have previously noted, the DOJ Civil Rights Division's conclusion that a prosecution is not warranted undercuts any general inference that the USAO is going ahead with an investigation. (Dec. 10, 2015 Tr. 8:21–9:9; April 8, 2015 Opinion at 11–12, ECF No. 144.)

As for the FBI, Rios's counsel, Mr. Aboushi, confirmed that FBI Agent Laura Rugler told his co-counsel, Mr. Silberman, "that the FBI completed their investigation and were not moving forward with any charges against the defendants." (Sept. 22, 2014 Tr. 11:11–18, ECF No. 134-2, Ex. D).

As observed before, the most that any agency could *ever* say (in or out of a Rule 104 hearing) is that its investigation is closed for now. Mahoney will always face the choice of either testifying, or else (validly or not) asserting his Fifth Amendment rights based on the fear of a renewed investigation. Conducting a Rule 104 hearing would not dispel those concerns or furnish the kind of insurance that he seems to seek. And, as stated above, there is no indication that more information is available

8

from any government agency apart from that already provided.[5]

### III. CONCLUSION

Accordingly, based on this Opinion and for good cause shown;

**IT IS** this 19th day of May, 2015,

**ORDERED** that Defendant Mahoney's motion for reconsideration (ECF No. 150) is DENIED.

_____
**Kevin McNulty**
**United States District Judge**

---

[5] I note that my decision is not based on Rios's letter suggesting that Mahoney and other officers waived their privilege by offering to testify in municipal proceedings regarding this case. (Rios Supp. Letter, ECF No. 155.) Mahoney denies that he was or is willing to testify in municipal court. (Mahoney Resp. to Rios Supp. Letter, ECF No. 156; Mahoney Recons. Reply, ECT No. 160.)